EVERT DE BRUIN, Appellee, v. ALEXANDER STUDER et al., Appellants.

JUNE 26, 1928.

130

O. D. Nickle, for appellants.

Van Oosterhout & Kolyn and Martin D. Van Oosterhout, for appellee.

EVANS, J.—The petition charged the defendants jointly with an assault and battery upon plaintiff. It predicated the joint character of the assault both upon previous conspiracy and upon actual joint participation. The alleged assault occurred on October 19, 1926. The plaintiff was at that time 31 years of age. He was a laborer, and was engaged in husking corn for Hoefakker, at 3:30 P. M., when the two defendants came unexpectedly to him. The assault and battery occurred almost immediately, and was quickly over. The defendants left the place together, leaving the plaintiff lying on the ground, unconscious. The last sign of life which they heard was a "groan." He did not recover consciousness for three hours thereafter. He was badly injured. His nose was broken, and was flattened upon his cheek. His eye was swollen closed, and his jaw was cut. His face was covered with blood, and he had suffered much from loss of blood. He was unable to resume work to any degree for several days, and has suffered ever since from recurring fainting spells and much nervousness.

The points most strongly urged upon this appeal by appellants are: (1) That the conspiracy count of the petition should have been dismissed, for want of evidence; (2) that the motion of defendant Gross, made at the close of plaintiff's evidence, should have been sustained, for want of proof against Gross; (3) that, if the verdict should be set aside as against Gross, it must also be set aside as against Studer, because there is no way to know, under the record, whether the jury predicated recovery upon the act of Gross or upon that of Studer. The preliminaries leading up to the main event under consideration may be stated briefly: Studer is a farm owner, residing in town. Gross was his tenant. On Sunday afternoon, six weeks prior to the event in question, De Bruin, Studer, and one Yunkers loafed

and smoked together in a friendly way in front of Doul's restaurant at Rock Valley. Yunkers testified to the following conversation:

"I was present in front of Doul's restaurant at Rock Valley, about six weeks before this trouble happened, when Evert De Bruin, Mr. Studer, and myself were sitting in front of the restaurant, one Sunday afternoon. We three were smoking together. Mr. De Bruin was a neighbor of mine, and we were always friendly together, and we talked about farming and everything we could think of, and we got to talking about farming and nationalities and everything. De Bruin handed it to me, and I handed it to him; and finally Mr. Studer made a remark, 'I believe I have got a pretty good renter this time,' and then Mr. De Bruin says: 'Yes, Mr. Studer, you don't know what kind of a man you got here. One thing is sure: it is a damned dirty place. I wouldn't eat a meal there for a dollar!' "

Six weeks later, and on the morning of the alleged assault and battery, Studer felt impelled by his conscience to repeat this conversation to Gross. This recital by Studer and the events following it are related in appellant's brief as follows:

"Mr. Studer went to Gross's home, and a conversation resulted, in which Mr. Gross told Mr. Studer that he hadn't bought any meat during the summer, and in reply Mr. Studer told him of what the appellee said, and that Mr. Gross said that there must be some mistake about it, and asked him if he would go with him to find the plaintiff and ask an apology. That they went to the appellee's brother, and he told them where the appellee was working, and they went out to see him, and that Mr. Studer asked appellee if he knew Mr. Gross, and that he said that he did not. Mr. Studer then asked him about the statement made by him concerning defendant Gross and his wife. That appellee replied that he did not; that it was a lie. That Mr. Studer laid his right hand on appellee's shoulder and said, 'Now, Mr. De Bruin, you wouldn't call me a liar, would you?' and the appellee said, 'Yes, you are a liar,' and he raised his right hand, equipped with a husking pin, to strike him. 'Mr. Studer jumped back about two steps, and I [Gross] hit him once on the nose, because I was afraid he was going to hit

Mr. Studer. I struck him before he had a chance to hit the old man' (29-25 *et seq.*). That they immediately left, but, after going a short distance, they turned around, and saw that the appellee was standing up beside the wagon, just about the center of the wagon, and they left without any further trouble.''

On the trial, the plaintiff testified as follows:

''Mr. Gross and Studer came there, and I was first aware of the fact when Mr. Studer pounded on my back, and said, 'You know that man standing in front of you?' and I looked up, and Mr. Gross was straight ahead of me, and he said, 'Didn't you tell any dirty stories around town that my wife was so dirty you wouldn't eat a meal for a dollar?' I said, 'Man, how could I? I don't know you. That stuff is a lie.' I went to look around, and Studer said, 'You call me a liar?' and he gave me a knock on the left cheek, and I fell against the wagon. At this time Gross was 10 feet ahead of me, and Studer was two feet behind me. I don't know what happened afterwards; I did not hear any talk and did not see anything. When I came to, my horses were gone, and I could hardly see.''

He also testified concerning Gross (who was in front of him), ''I seen him coming.''

At the close of plaintiff's evidence, the defendant Gross filed a motion for a directed verdict in favor of Gross, on the ground that there was no evidence to connect him with the battery. This motion was overruled, and error is assigned upon such ruling.

In the further course of the trial, Gross testified that he, and not Studer, struck the plaintiff. The argument of appellant is that the motion at the close of plaintiff's testimony should have been sustained because the plaintiff had been unable to testify directly that Gross struck him. The circumstances already indicated were quite sufficient to go to the jury on the question of Gross's connection with the battery, even though the plaintiff was not able to recollect what had transpired after the first blow by Studer. The event was momentary, and the plaintiff was left unconscious. Some obliteration of memory was quite inevitable from such a concussion. The attitude of appellants here is that the verdict should have been directed for Gross at the close of

plaintiff's evidence because plaintiff's direct evidence failed to show that he struck the blow. A directed verdict for Gross being thus accomplished, the defense of Studer was that Gross, and not Studer, struck the blow, and this fact was proved by Gross himself. Studer therefore claims a discharge because Gross struck the blow, and Gross claims a discharge because the plaintiff failed to testify that he (Gross) struck the blow. It should further be considered that the defendants, on cross-examination by the plaintiff, developed the fact that he had filed information against the defendants before a justice of peace; and in such cross-examination, the following is not to be ignored:

"Q. Mr. Gross was the one that pled guilty? A. Yes, I suppose."

The motion for a directed verdict for Gross was not repeated at the close of the whole evidence. The state of the evidence at the close was the criterion for the purpose of assignment of error.  At that time, Gross was confessedly guilty. Whether a technical conspiracy was shown, would be quite immaterial. Clearly, there was evidence of joint participation in the wrongful act. We think that the circumstances leading up to the assault were such also as to justify the finding of conspiracy, if such finding had been essential. Gross was a stranger to De Bruin. Studer knew them both. Professedly, they were seeking to find De Bruin, to exact an apology from him. They acted with a zeal which tolerated no delay. They sought out De Bruin at a busy hour of a busy day. They had gone some miles to find him. Studer's attitude here is that he went in order to *introduce him.* The jury could properly find that they mutually intended to do the very thing which they did.

Nor can it be said, upon this record, that the verdict was excessive; and this is so whether it be deemed to include exemplary damages or not.

The judgment below must be—*Affirmed.*

All the justices concur.